No. 27,127.

THE BREMEN FARMERS MUTUAL INSURANCE COMPANY, OF BREMEN, *Appellee,* v. (A. T. INGMAN et al.) C. B. INGMAN, *Appellant.*

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Action to Recover Back Payment of Loss—Estoppel by Knowledge of Facts.* The defendant, who was about to enlist in the world war, executed a deed without consideration, conveying his farm to his brother with the understanding that if he did not return the brother should dispose of it for the benefit of defendant's children. During his absence buildings and property on the farm were insured against fire by his brother. When he returned he took possession of the farm, the brother writing on the face of the deed that he surrendered all claim to the farm. Afterwards a loss occurred and the president of the insurer came to adjust it, and was told about the condition of the title and that there had been no transfer of the policy. He prepared a formal notice of loss and advised the defendant to sign his brother's name thereto, saying that he would attend to the transfer of the policy, which was not done. The loss was allowed by the board and insurance was given to defendant on other property before the check given in payment of the loss was cashed. Afterwards the insurer brought an action to recover the amount paid to defendant for the loss. *Held,* that there being testimony that the payment was made by the insurer with a knowledge of the essential facts, it was not in a position to insist that the policy was invalid or that it was entitled to recover back payment made to defendant because of the nontransfer of the policy, and further that it was not entitled to a directed verdict.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed February 12, 1927. Reversed.

*F. R. Lobough* and *J. R. Hyland,* both of Washington, for the appellant.

*Edgar Bennett,* of Washington, *Edgar C. Bennett* and *P. G. Wadham,* both of Marysville, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action is one brought by the Bremen Mutual Insurance Company against C. B. Ingman for money alleged to have been wrongfully paid to C. B. Ingman on property that be-

longed to A. T. Ingman, when the policy had never been transferred to C. B. Ingman although he was in possession of the land and property at the time of the loss for which this money was paid.

Plaintiff is a corporation organized and operating under the. laws of Kansas as a mutual company for the purpose of mutual insurance of its members against loss or damage by fire, lightning or tornado, and authorized to insure dwelling houses, barns, outbuildings, and personal property, being upon farms as farm property, and belonging to the member of the company, every person taking insurance with the company becoming a member thereof.

On May 24, 1919, A. T. Ingman made an application in writing for insurance in said company upon certain property therein mentioned, to the amount of $5,665, $350 on barn No. 2 including foundation, and $300 on hay in barn or barnyard, and the plaintiff issued and delivered to A. T. Ingman its policy of insurance No. 5906, wherein in consideration of the agreements and warranties contained thereon, and the receipt of a note for $113.30, insured the said A. T. Ingman against any immediate loss or damage by fire and lightning, not exceeding in aggregate the sum of $5,665, for the term of five years, from May 24, 1919, to May 24, 1924, subject, however, to the conditions and limitations in the by-laws of said company included in the policy.

One by-law is that when property is sold or conveyed, the policy must be transferred within ten days of the time of such sale or transfer, and if not done the secretary shall cancel the same, the secretary to receive 50 cents for each policy transferred.

By the record it appears that C. B. Ingram desired to enlist in the world war, and conveyed the farm by deed to his brother, who took possession while his brother was absent, with an understanding that if he did not survive the war the property should be devoted to the benefit of his children. No consideration was paid for the transfer. When executed it was placed in a tin box in his home, to which both brothers had access, and defendant testified that while a deed had been executed he regarded the land to be his own. While he was away the property was insured in the name of his brother and no retransfer of it had been made after his return until after the fire loss had occurred. When he returned to his home he took possession of the farm and his brother instead of formally transferring it back to him, indorsed on the deed the words "I hereby

surrender all claim to above place." Signed "A. T. Ingman." There is no question of the destruction of the property by fire on September 8, 1922, nor as to the fact that notice of the loss was brought to the attention of the defendants.

The president, Fróhberg, and the secretary, Herman Thiele, lived in the neighborhood and upon receiving verbal notice of the loss Frohberg went to defendant's premises the next day to adjust it. He prepared a formal notice of loss and then observing that the property had been insured in the name of A. T. Ingman, he called attention to the ownership, and when defendant came to the matter of signing the notice, he asked Frohberg if it would be all right for him to attend to it and Frohberg said it would, and then defendant signed the name of A. T. Ingman as well as his own to the notice. Frohberg said he thought it was an honest loss and that no further proof was necessary. There was testimony to the effect that the matter of title to the property was discussed and Frohberg said that in order to make the record straight defendant should have the policy transferred, and later said "I will see to it."

The claim was presented to the board of directors by the president, on October 3, 1922, and the claim was allowed, a check was made to A. T. Ingman for $650, and delivered to the defendant, who soon afterwards cashed it. Within a few days Frohberg called and solicited an application for insurance on a barn built to replace the one which had been burned. A policy was issued to defendant as owner, and at that time Frohberg told the defendant to have the former policy which covered property other than that which had been destroyed transferred, but it was not done. It appears that in September, 1923, there was a second loss under policy 5609, and when notice thereof was given Thiele, the secretary inspected the loss and called attention to the fact that there had been no transfer of the policy and insisted that there was no liability. He demanded a return of the money which had been paid upon the first loss, and that being refused this action was brought.

The contention of plaintiff is that as the insurance was taken out in the name of A. T. Ingman, as owner of the property, when he was not in fact the owner, the policy was void from its inception, and if he is to be regarded as an owner, there had been no transfer of the policy as the by-laws require, and no payment of the transfer fee, and hence no liability of the company.

Bremen Farmers Mutual Ins. Co. v. Ingman.

It is contended by defendant that there was a waiver of irregularities in that there was testimony to the effect that the president, who was general agent of the insurance company, had knowledge of the condition of the title, had advised defendant to sign his brother's name to the notice, calling attention to the lack of transfer of the policy and said that he would see that it was done. There was also testimony that the president presided at the meeting of the board where the loss was considered and ordered paid, and testimony, too, that the plaintiff did insure other property on the farm with full knowledge of the facts before the check was cashed, and that payment of loss with knowledge of the essential facts constitutes a waiver of the grounds of forfeiture. After the overruling of the demurrer to plaintiff's evidence the defendant offered testimony in support of the waiver, and the court then instructed the jury to return a verdict in favor of the plaintiff.

The insurance taken out by A. T. Ingman while holding the legal title to the farm cannot be regarded as void. There was no fraud in the transaction nor anything which added to the hazard of the company. When plaintiff learned the facts as to ownership there was no return of the premium nor any steps taken towards the cancellation of the policy. After the insurance company was informed as to the state of the title, they insured the defendant as owner of other property. Under the testimony the court was not warranted in instructing a verdict in favor of plaintiff, as the testimony tended to show that the company had waived the grounds upon which a forfeiture might have been declared. A noncompliance with the conditions in the policy may be waived where the insurer has knowledge of the essential facts, or rather it may be estopped to deny liability. (*Wildey v. Sheppard,* 61 Kan. 351, 59 Pac. 651; *Insurance Co. v. Allen,* 69 Kan. 729, 77 Pac. 529; *Green v. Annuity Association,* 90 Kan. 523, 135 Pac. 586; *Graff v. Insurance Co.,* 107 Kan. 648, 193 Pac. 356; *Stanley v. Indemnity Association,* 112 Kan. 412, 210 Pac. 1096; *Plotner v. National Fire Ins. Co.,* 118 Kan. 234, 234 Pac. 959.) In the Stanley case it was held:

"In construing policies of insurance the rule is that notwithstanding the agreement of parties a warranty may, by reason of facts and circumstances, be regarded as waived by the company, or, which amounts to the same thing, the company may be estopped to rely upon the warranty." (Syl. ¶ 1)

In the course of the opinion it was said:

"And where the agent had knowledge of the existence of the facts which would render the contract void in its inception, if its provisions were insisted upon, it would be presumed that such provisions were waived, because the courts will not impute to the company the fraudulent intent to deliver and receive pay for an invalid policy. Upon this ground the agent's knowledge of the fact that the property is vacant, or that there is concurrent insurance, or encumbrances, or his knowledge of facts relating to the ownership of the property, are regarded as knowledge of the company." (p. 416.)

In the Plotner case the insured represented that he was the sole owner of real property upon which were the insured buildings, but it was found that he was only the owner of an undivided three-fourths of the property. Afterwards he acquired the other one-fourth and there being no indication that the insured was endeavoring to take unfair advantage by reason of the mistake in the application and first proof of loss, it was held that recovery might be had upon the policy. It was said that inasmuch as the agent who solicited the insurance had been told that he would have to settle as to a child's rights in the property there was no deception and the policy was held to be valid. Here the plaintiff paid the insurance knowing the facts as to ownership and paid it upon the theory that it was an honest loss. There was no cancellation of the policy nor return of the premium it had received. There was nothing approaching fraud on the part of the insured and the hazard of the risk was not increased by the failure of the insured to obtain a transfer of the policy. Upon the testimony in the case the court was not justified in directing a verdict in favor of the plaintiff and hence the judgment must be reversed and the cause remanded for a new trial.